UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| COURTESY OUTDOOR FINANCE, LLC | ) ) ) | Case No. 10-1382 |
| VS. | ) ) | JUDGE TUCKER MELANÇON |
| BASS LTD, ET. AL. | ) | MAG. JUDGE PATRICK HANNA |

**PLAINTIFF'S REPLY TO DEFENDANTS' BRIEF IN OPPOSITION TO SECOND MOTION FOR SUMMARY JUDGMENT**

Plaintiff Courtesy Outdoor Finance, LLC ("Plaintiff" or "Courtesy Outdoor") files this reply to Defendants' Brief in Opposition to Plaintiff's Second Motion for Summary Judgment (Dkt. 52) filed by Defendants Bass Ltd. ("Bass Ltd."), Bass Digital Sign Sales, LLC ("Bass Digital"), and Stephen B. Sonnier ("Sonnier") (Bass Ltd., Bass Digital, and Sonnier are sometimes collectively referred to as "Defendants").

Plaintiff submits that the reply of the Defendants and the prior affidavit of Defendant Sonnier are not adequate evidence to prevent entry of judgment. Further, the cases relied on by the Defendants are easily distinguished and provide no support for Defendants' position. *Compass Bank* involved a discrepancy of asserted balances that existed on the bank's own conflicting records; indeed, in that case "the Defendants have proffered summary judgment indicating that the amount of indebtedness" was lower that that previously demanded. That is not the case here. *F.D.I.C. v. Miller* involved a claim by the plaintiff FDIC for balances owed on a note where an underlying embezzlement was an issue of fact and where "what Plaintiff alleged Defendants owe and what the loan history that Plaintiff provides...are disparate amounts." That is not the case here. Finally, the *Investor Collection Services* suit involved multiple changes,

discrepancies, "factual conflicts with Plaintiff's calculation," and unexplained deposition testimony regarding the amounts sued for. Again, that is not the case here. Plaintiff now replies to the substance of the Defendants' reply brief.

<u>Supplemental Affidavit of Plaintiff</u>

Defendants assert that there is no evidence who prepared the Exhibits 1 and 2 to the Gash Affidavit, notwithstanding that the affidavit states that it is a true and correct calculation of the amounts owed. While the affiant's statement should be sufficient, out of an abundance of caution Plaintiff has filed a short supplemental affidavit, attached to this reply, as additional summary judgment evidence regarding the details of the preparation of Exhibits 1 and 2.

<u>The principal balance cannot be genuinely disputed</u>

Notwithstanding the arguments of Defendants, and as shown in Plaintiff's original memorandum, they each signed documents stipulating and agreeing to the principal note balances when the notes were restructured in April, 2009. Their complaint that the balances were "estimated" at that time and in fact were lower (as shown in the original Gash affidavit) is to their advantage, not disadvantage. That fact does not have the result that the amounts owed are somehow contingent. If the Defendants truly believe their note balances are calculated incorrectly, then they could have afforded themselves the opportunity of discovery or their own expert calculations, or surely they would have raised that issue long before now. They did none of those things.

Further, in the restructure documents in 2009, the Defendants agreed in writing as follows:

> [From the Bass Digital note restructure]
> "Borrower acknowledges that it has no offsets, claims, counterclaims or defenses against Lender or under any of its obligations contained in the Bass Digital Note, and to the extent any such offsets, claims counterclaims

> or defenses exist, the same are hereby waived by Borrower. Borrower hereby reaffirms all representations and warranties of Borrower as contained in the Bass Digital Note and further states that Borrower is in full compliance with all covenants of Borrower set forth in the Bass Digital Note and any security agreements relating thereto." (Dkt. 29-18 p. 10 at ¶10; similarly provided with respect to the Bass Limited note at Dkt. 29-6 p. 13 at ¶10.)

Claims of an incorrect principal balance would have been included in this release and waiver.

<u>The interest rate calculations cannot be genuinely disputed</u>

The Defendants' argument on the interest rate is a diversionary tactic, as it was in their opposition to Plaintiff's first summary judgment motion. As shown by Exhibits 1 and 2 to the original Gash affidavit, at the time of the restructure, the notes were restructured with an agreed new principal balance with no past due interest. The interest after the date of the restructure is calculated at the agreed rate of 11.5% (original Gash Affidavit, ¶4, 15). The Defendants have not alleged or shown that the mathematical calculation of interest after that date is erroneous. Moreover, as shown above, as of the date of the restructure, the Defendants also agreed that they had "no offsets, claims, counterclaims or defenses against Lender or under any of its obligations contained" in the two notes. Such claims would have included claims for any alleged improperly calculated interest (as well as principal, as shown above).

<u>Late Fees</u>

The only "summary judgment evidence" Defendants assert in opposition to the charges for late fees ($67,500.00 on each of the two notes) is the naked assertion by Defendant Sonnier that Plaintiff "never invoiced" for late fees. Regardless whether this is true or not, the notes provide for late fees. Further, his assertion that Plaintiff "routinely waived the requirement" for timely payments is not supported by anything other than his statement. Notably, as shown by

Exhibits 1 and 2 to the original Gash affidavit, late fees were only charged after the restructure in 2009, and Defendant Sonnier has not alleged during what time period (if any) that the Plaintiff "waived" anything. Moreover, as set forth in the notes themselves, "Lender may delay or forego enforcing any of its rights or remedies under this Promissory Note without losing them." (See ¶ 13 of Notes A and B at Dkt. 29-5 p. 4 and Dkt. 29-17 p. 4.) And in the security agreements the Defendants signed they agreed as follows:

> [From the Bass Digital commercial security agreement]
> **"(a) Amendments; No Waiver by Lender.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. Neither this Agreement nor the Note or the Related Documents nor any term or provision hereof or thereof may be changed, modified, waived, discharged or terminated orally or in any manner other than by an instrument in writing, signed by the party against whom the enforcement of such change, modification, waiver, discharge or termination is sought. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing with Lender and Grantor, shall constitute a waiver of any Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to, subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole direction of Lender." (Dkt. 29-7 p. 9 at ¶11[a]; identically with respect to the Bass Digital security agreement at Dkt. 29-19 p. 9 at ¶11[a].)

Finally, as set forth in the Supplemental Affidavit of Mr. Gash, Plaintiff never waived any late fees after the restructure in 2009. However, if the Court believes that there is truly a genuine issue of fact with respect to Plaintiff's right to the late fees, Plaintiff nonetheless is certainly entitled to partial summary judgment for the undisputed principal amounts owed of

4

$4,130,396.03 on Note A and $1,070,260.93 on Note B, plus fees and costs of not less than $111,957.45.

<u>Matters addressed in Defendants Statement of Undisputed Material Facts but not in their Memorandum</u>

The Defendants raise two matters in their Statement of Undisputed Material Facts but make no argument about them in their Memorandum. Plaintiff responds to each out of an abundance of caution.

Defendants assert that they provided Plaintiff with monthly financial statements as required. Presumably they make this assertion in order to try and prove that they are not in default under the notes. The reporting requirement is set forth in the restructure documents:

> "On or before the 20th day of each month, the Borrower and Bass Digital. shall provide to Lender monthly interim financial statements for the immediately preceding month and a detailed spreadsheet showing the occupancy and cash collections by location of Borrower and Bass Ltd. for the immediately preceding month, all certified by an officer of Borrower or Bass, Ltd., as applicable, in form reasonably acceptable to Lender. Failure to timely provide the required monthly financial information shall constitute an Event of Default under the Bass Digital Note." (Dkt. 29-6 p. 13 at ¶7; similarly for Bass Digital., Dkt. 29-18 p. 10 at ¶7)

The Original Affidavit of Mr. Gash shows that in fact the Defendants have not complied with the reporting obligations (Original Affidavit of Mr. Gash at ¶9 and 20) as does Mr. Gash's Supplemental Affidavit. Defendants failed to timely provide the required financial statements, with the last financial statements provided prior to this suit being filed for the time periods April, 2010 (for Bass Ltd.) and May, 2010 (for Bass Digital). Regardless, Defendants do not dispute their failure to make <u>any</u> note payments since March, 2010 (for Bass Ltd.) and May, 2010 (for Bass Digital) (Original Affidavit of Mr. Gash at ¶9 and 20). Thus, there is absolutely no dispute that the Defendants are at least in severe payment default.

Defendants also assert that they cannot "verify Plaintiff's...blanket lien." Plaintiff submitted all of its collateral documents with its summary judgment evidence. The Defendants submitted no documents to contradict Plaintiff's collateral and security. The ranking(s) of Plaintiff's liens are irrelevant to Plaintiff's right to have its liens recognized and maintained in their proper and legal rank and order. Even if the Defendants granted liens to other lenders, those lenders are not necessary parties to this matter.[1] Finally, the Defendants could have undertaken simple title research on this issue if they thought it was relevant to their defenses.

## CONCLUSION

In view of the facts shown above from the documents the Defendants signed, the arguments of Defendants in their opposition border on tactics interposed solely for delay. This suit on two notes was filed in September, 2010. The Defendants have been successful in delaying judgment in this matter. Meanwhile, Plaintiff's collateral interests are at significant risk. Defendants have shown no basis on which to prevent entry of judgment.

Dated: September 1, 2011.

                BY ATTORNEYS:

                KANTROW, SPAHT, WEAVER and BLITZER
                A PROFESSIONAL CORPORATION

                /s/ David S. Rubin
                David S. Rubin, T.A. (La. 11525)
                Julie Moffett McCall (La. 29992)
                445 North Boulevard, Suite 300 (70802)
                P.O. Box 2997
                Baton Rouge, LA  70821-2997
                Telephone: (225) 383-4703/
                Facsimile:  (225) 343-0630
                **Attorneys for Plaintiff Courtesy Outdoor Finance, LLC**

---

[1] When lenders foreclose on collateral, there is no need under Louisiana law to name competing lienholders as parties to the suit.

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2011 a copy of this pleading was filed electronically with the Clerk of Court using its CM/ECF System. Notice of this filing will be sent to Mr. John H. Weinstein and Mr. Louis M. Phillips by operation of the Court's CM/ECF System.

/s/ David S. Rubin

264051v1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| COURTESY OUTDOOR FINANCE, LLC | ) ) ) | Case No. 10-1382 |
| VS. | ) ) | JUDGE MELANÇON |
| BASS LTD, ET. AL. | ) | MAG. JUDGE HANNA |

## SUPPLEMENTAL FFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

STATE OF GEORGIA

COUNTY OF FULTON

Before me, the undersigned authority, personally came and appeared

**JAMES H. GASH, JR.**

who, after being duly sworn by me, did depose and state as follows.

I am President of Courtesy Outdoor Finance, LLC ("Plaintiff"). I have personal knowledge of the matters stated herein. My personal knowledge is based on my position as President of the Plaintiff and on the following process I have employed to assure that this affidavit is factually correct. I have been President of the Plaintiff since April 8, 2008. I am the only person currently working for the Plaintiff other than various bookkeeping and clerical personnel. In my capacity with the Plaintiff, I have been and I am the responsible person for the supervision of the loans from the Plaintiff to Bass Ltd. and Bass Digital Sign Sales, LLC. I have personally been involved in supervising these loans since 2008 and have spoken and/or met with Mr. Sonnier, a defendant in this case and the principal of the other two defendants, on many occasions. I personally review all payments received by Plaintiff on said loans, and, along with clerical personnel, maintain the Plaintiff's book and records with respect to said loans. Before

signing this affidavit, I personally reviewed and thus I am personally familiar with the files of the Plaintiff with respect to said loans, and the following facts to which I am attesting are based on such review as well as my historical knowledge of this matter.  All defined terms in this affidavit have the same meaning as defined in my affidavit of August 4, 2011 (Dkt. 48-3).

I personally prepared the spreadsheet labeled as Exhibits 1 and 2 to my affidavit dated August 4, 2011 (Dkt. 48-3) and input the data in the spreadsheet. The spreadsheet was prepared using Microsoft Excel and the data was obtained from the Plaintiff's books and records maintained in the ordinary course of business. Those books and records with respect to the matters involved in this suit are maintained by me (with minor clerical assistance), and I am the person responsible for determining the principal and interest balances on the notes of Defendants Bass Ltd. and Bass Digital Sign Sales, LLC and determining the Defendants' compliance with their obligations under the note, collateral, and security documents signed by them.

At no time after the restructure of Notes A and B in April, 2009, did I agree to waive any late fees or charges incurred by the Defendants. Further, Plaintiff never sent invoices for late charges or late fees on Notes A and B, and it was the responsibility of the borrower to pay timely or late fees would be assessed to the balances on the notes.

The last financial statements sent to Plaintiffs by the Defendants prior to this suit being filed was for the time period April, 2010 (for Bass Ltd.) and May, 2010 (for Bass Digital Sign Sales, LLC).

_____
James H. Gash, Jr.

SWORN TO AND SUBSCRIBED before me on this 31st day of August, 2011.

_____
Notary Public
My Commission Expires: June 13, 2013

*[Notary Seal: Martha M. Rauche, Notary Public, Georgia, DeKalb County, Expires June 13, 2013]*

264052v1